REID COLLINS & TSAI LLP
William T. Reid, IV
R. Adam Swick
One Penn Plaza, 49th Floor
New York, New York 10119
Tel.: (212) 344-5200

Joshua J. Bruckerhoff (pro hac vice pending)
Paul T. Harle (pro hac vice pending)
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
Tel.: (512) 647-6100

*Counsel to Joint Official Liquidators of Saad*
*Investments Company Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SAAD INVESTMENTS COMPANY LIMITED,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 15-11440 |

## VERIFIED PETITION IN SUPPORT OF
## APPLICATION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING
## PURSUANT TO 11 U.S.C. § 1517 AND ADDITIONAL RELIEF

Petitioners Hugh Dickson of Grant Thornton Specialist Services (Cayman) Limited and

Stephen Akers and Mark Byers of Grant Thornton U.K. L.L.P (collectively, the "**JOLs**" or

"**Petitioners**"), are the foreign representatives, as defined in section 101(24) of title 11 of the

United States Code (the "**Bankruptcy Code**"), of Saad Investments Company Limited

("**SICL**").  SICL is a debtor in a foreign proceeding (the "**Cayman Islands Proceeding**"), as

defined in Bankruptcy Code section 101(23), that is pending before the Grand Court of the

Cayman Islands, Financial Services Division (the "**Cayman Islands Grand Court**").

Petitioners submit this Verified Petition (the "**Verified Petition**") pursuant to sections 1515 and 1517 of the Bankruptcy Code, seeking recognition of the Cayman Islands Proceeding as a foreign main proceeding and additional relief under section 1521. As set forth below, this application is based upon (i) Petitioners' extensive review of documents and financial records, including third-party pleadings and records; (ii) SICL's books and records in Petitioners' possession; (iii) the work Petitioners have performed in their role as JOLs over the last few years; and (iv) Petitioners' personal knowledge.

## JURISDICTION AND VENUE

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code, and the Amended Standing Order of Reference (Preska, C.J.) dated January 31, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P). Venue is proper pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are sections 108, 1504, 1509, 1515, 1516, 1517, 1520, and 1521 of the Bankruptcy Code and the Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## PRELIMINARY STATEMENT

2.       Petitioners, as the duly appointed foreign representatives of SICL, have commenced this Chapter 15 case under section 1504 of the Bankruptcy Code by filing this Verified Petition, accompanied by all certifications, statements, lists, and documents required pursuant to section 1515 of the Bankruptcy Code and Bankruptcy Rules 1007(a)(4) and 1008.

3.       Petitioners are entitled to petition this Court directly under section 1509 of the Bankruptcy Code for recognition of the Cayman Islands Proceeding. The Cayman Islands Proceeding has been in progress for almost six years with consistent creditor support and

involvement.  The Cayman Island Proceeding involves over $9.7 billion in assets and about

$3.754 billion in liabilities, stemming from holdings and obligations located in multiple

jurisdictions in the Caribbean, Europe, Australia, and Middle East.  Accordingly, in carrying out

their duties, Petitioners have already sought and received recognition of the Cayman Islands

Proceeding as a foreign main proceeding in multiple jurisdictions, including in England and

Australia, and brought various legal proceedings to recover SICL's assets on behalf of creditors.

To date, Petitioners have recovered over $450 million in assets.

4.       Petitioners seek recognition of the Cayman Islands Proceeding to efficiently

administer SICL's assets and investigate SICL's affairs in the United States.

5.       Petitioners satisfy the requirements for recognition of the Cayman Islands

Proceeding as a foreign main proceeding, as defined in section 1502(4) of the Bankruptcy Code,

because the center of main interests—or "COMI"—of SICL is clearly in the Cayman Islands.

Further, SICL has assets in the United States and thus to the extent section 109 of the Bankruptcy

Code is applicable, SICL meets those requirements. Petitioners have also met the requirements

of sections 1515 and 1517 of the Bankruptcy Code.  Moreover, recognition of the Cayman

Islands Proceeding as a foreign main proceeding is not contrary to the public policy of the United

States.  Rather, recognition would further the goals of Chapter 15 by ensuring that the Cayman

Islands Grand Court continues to be the forum supervising SICL's liquidation so as to enhance

claim and asset recovery.

6.       Accordingly, Petitioners respectfully request that the Court (i) recognize the

Cayman Islands Proceeding as a foreign main proceeding, and (ii) grant the additional relief

requested in this Verified Petition.

## BACKGROUND

7.      The Court is respectfully referred to the accompanying Declaration of Hugh Dickson (the "**Dickson Declaration**") and the Declaration of Shelley White (the "**White Declaration**"), which set forth the relevant facts in greater detail.

8.      The information in this Verified Petition and the accompanying declarations are based upon the information that is presently available to Petitioners.  Although Petitioners have requested and received documents from various parties, some records have not yet been turned over.  Therefore, except as where otherwise indicated, the facts upon which this Verified Petition is based derive from the books and records of SICL that are in the possession of Petitioners, and such other documents as Petitioners have been able to identify, collect, and review during the course of the last approximately six years.

**I.      SICL's Corporate Status and Pre-Liquidation Operations**

9.      SICL is an exempted limited liability company (Company No. 36729) limited by shares, organized and incorporated on July 9, 1990 under the Companies Law (as amended) of the Cayman Islands.  SICL was originally incorporated under the name Holiday Mood Limited, but later changed its name to SICL. A copy of SICL's Certificate of Incorporation is annexed to the Dickson Declaration as Exhibit A.  A copy of SICL's Certificate of Name Change is annexed to the Dickson Declaration as Exhibit B.

10.     SICL is the main holding company of a group of Saad entities (the "**Saad Group**").  The Saad Group's Chairman and SICL's beneficial owner is Maan Al-Sanea ("**Al-Sanea**") of Saudi Arabia.  According to Forbes magazine, Al-Sanea's net worth was once $7 billion, ranking him as the world's 62nd richest person.  SICL's stated purpose was to hold and manage Al-Sanea's non-Saudi Arabian assets, including a portfolio consisting of equities, funds,

4

interest bearing securities, and real estate. A corporate organization chart with the entities directly relevant to SICL is annexed to the Dickson Declaration as Exhibit C. According to SICL's internal accounting records, SICL held about an estimated $9 billion in assets and $4.5 billion in liabilities. SICL's interests are spread across the globe, including in the Caribbean, Australia, Europe, and the Middle East.

## II.    Events Leading to Liquidation

11.     While the Saad Group was undoubtedly impacted by the global financial crisis, the genesis of its decent into liquidation stems from a chain of specific events. Around May 28, 2009, the Saudi Arabian Monetary Authority ("**SAMA**") froze Al-Sanea's assets. The freeze was reported globally and triggered the withdrawal by Moody's of the credit rating of SICL's debt in early June 2009.

12.     Prior to the freeze, SICL entered into a Credit Facility Agreement with a syndicate of banks. The banks made available to SICL a syndicated unsecured revolving credit facility in the amount of US$2.815 billion (the "**Credit Facility Agreement**"). As a result of the removal of SICL's credit rating, individual banks issued default notices under the Credit Facility Agreement and other bilateral agreements between those banks and SICL and began selling collateral shortly after the SAMA asset freeze.

13.     During this time, the Saad Group contemplated an out-of-court restructuring with creditor agreement. A director of the Saad Group sent a letter to SICL's lenders notifying them of the proposed restructuring to "resolve the funding problems with a proper process." In late June 2009, SICL sent a notice to its lenders containing details of a meeting it proposed to be held in early July informing creditors of its restructuring proposals.

14.     The meeting never materialized.

### III.   Appointment of Joint Official Liquidators

15.     Instead, on July 30, 2009, Barclays Bank PLC, CALYON, and The Royal Bank of Scotland (the "**Petitioning Creditors**")—each a lender under the Credit Facility Agreement—filed a petition for the winding up of SICL.  The Petitioning Creditors requested that SICL be wound up and that Petitioners be appointed as Joint Official Liquidators of SICL.

16.     Following the petition, on August 5, 2009, the Cayman Islands Grand Court appointed Petitioners as Joint Provisional Liquidators of SICL, and authorized them "to take such steps as may be necessary or expedient for the protection of" SICL's assets.  On September 18, 2009, after hearing from the Petitioning Creditors and other supporting creditors, Petitioners were appointed Joint Official Liquidators of SICL.  The Cayman Islands Grand Court's orders appointing Petitioners as Joint Provisional Liquidators and as Joint Official Liquidators are annexed hereto collectively as **Exhibit A**.

17.     Petitioners are each directors of Grant Thornton Specialist Services (Cayman) Limited and officers of the Cayman Islands Grand Court.

18.     All known creditors were notified of Petitioners' appointment and SICL's Cayman Islands Proceeding.  No creditor has objected either formally or informally.

19.     One or more of the Petitioners were also appointed as Joint Official Liquidators over various other entities within the Saad Group that were connected to SICL:

| Group company | Liquidation process and jurisdiction | Date of liquidation |
|---|---|---|
| Lombard Atlantic Bank N.V. | Voluntary Liquidation, Curacao | 4 September 2009 |
| Singularis Holdings Limited | Court Supervised Liquidation, Cayman Islands | 18 September 2009 |

| LA Investments Limited | Members' Voluntary Liquidation, UK | 21 September 2009 |
|---|---|---|
| Saad Investments Finance Company Limited | Court Supervised Liquidation, Cayman Islands | 26 October 2009 |
| Saad Investments Finance Company (No. 2) Limited | Court Supervised Liquidation, Cayman Islands | 26 October 2009 |
| Saad Investments Finance Company (No. 3) Limited | Court Supervised Liquidation, Cayman Islands | 26 October 2009 |
| Saad Investments Finance Company (No. 8) Limited | Court Supervised Liquidation, Cayman Islands | 26 October 2009 |
| Saad Investments Finance Company (No. 9) Limited | Court Supervised Liquidation, Cayman Islands | 26 October 2009 |
| Saad Investments Finance Company (No. 10) Limited | Court Supervised Liquidation, Cayman Islands | 26 October 2009 |
| Ringmore Limited | Summary Winding up , Jersey | 25 November 2009 |
| Saad Cayman Limited | Court Supervised Liquidation, Cayman Islands | 4 December 2009 |
| Saad Financial Advisory Services Limited | Official Liquidation in Dubai International Financial Centre | 22 February 2010 |

20.    While these entities are related to SICL, Petitioners are not seeking recognition of their foreign proceedings at this time.

21.     There are multiple foreign proceedings related to the Cayman Islands Proceeding that have already received recognition as foreign main proceedings in U.S. court.  First is Saad Investments Finance Company (No. 5) Limited, which is a wholly owned subsidiary of SICL and also in official liquidation in the Cayman Islands.  Due to a conflict, Petitioners were not appointed as Joint Official Liquidators of Saad Investments Finance Company (No. 5) Limited; instead Mark Longbottom and Nicholas Paul Matthews of Kinetic Partners were appointed as the entity's Joint Official Liquidators.  Saad Investments Finance Company (No. 5) Limited's Cayman Islands insolvency proceeding was recognized as a foreign main proceeding by order of the Bankruptcy Court for the District of Delaware, Case No. 09-13985-KG, Docket No. 39, December 4, 2009.

22.     The second related proceeding is Awal Bank, BSC ("**Awal Bank**"), which is a foreign banking corporation incorporated in the Kingdom of Bahrain.  SICL is a 48% shareholder of Awal Bank.  On July 30, 2009, the Central Bank of Bahrain placed Awal Bank into administration and appointed Charles Russell, a British law firm with a Bahrain office, as External Administrator.  Awal Bank's Bahrain insolvency proceeding was recognized as a foreign main proceeding by order of the Bankruptcy Court for the Southern District of New York, Case No. 09-15923 (ALG), Docket No. 18, October 28, 2009.  Subsequently, Awal Bank filed a voluntary petition under chapter 11 of the Bankruptcy Code also in the Bankruptcy Court for the Southern District of New York, Case No. 10-15518 (ALG).

23.     Finally, there is a third set of proceedings for seven of Awal Bank's subsidiaries—Awal Master Fund, Awal Finance Company Limited, Awal Feeder 1 Fund Limited, Awal Finance Company (No. 2) Limited, Awal Finance Company (No. 3) Limited, Awal Finance Company (No. 4) Limited, and Awal Finance Company (No. 5) Limited

(collectively, the "**Awal Subsidiaries**").   Each of the Awal Subsidiaries has liquidation proceedings in the Cayman Islands.  Chris Johnson, Russell Homer, Bruce Alexander MacKay, and Geoffrey Lambert Carton-Kelly were appointed as the Joint Official Liquidators of the Awal Subsidiaries.  The Awal Subsidiaries' Cayman Islands proceedings were recognized by order of the Bankruptcy Court for the Southern District of New York, Case No. 15-10652 (MEW), Docket No. 15, May 5, 2015.

## IV.   Petitioners' Liquidation Activities

24.     Petitioners are in the midst of a lengthy and complex liquidation process based in the Cayman Islands for which Petitioners are the sole persons authorized to act on SICL's behalf. SICL's multibillion-dollar liquidation is international in scale and has been in progress for almost six years.  Immediately upon appointment, Petitioners began the process of locating SICL's books, records, and holdings and having them brought under the control of Petitioners. Petitioners also moved SICL's registered offices from Maples & Calder, Ugland House, South Church Street, P.O. Box 309GT, George Town, Grand Cayman, Cayman Islands to Grant Thornton Specialist Services (Cayman) Limited, 10 Market Street, #765, Camana Bay, Grand Cayman, Cayman Islands, KY1-9006.

25.     Throughout SICL's liquidation, Petitioners have conducted thousands of hours of work on behalf of SICL's estate and creditors, centralizing its accounts and administering the conduct of the estate.  Some highlights of the work Petitioners have performed on SICL's behalf are as follows:

### A.     Creditor Consent and Participation

26.     Early in the liquidation process, Petitioners established communication with and the participation of SICL's creditors.  A Liquidation Committee was established.  The current

members of SICL's Liquidation Committee are (i) Credit Agricole CIB; (ii) HSBC Bank plc; and (iii) Citibank N.A.

27.     The role of the Liquidation Committee is to act as representatives for the general body of creditors.  The Liquidation Committee has consistently met on multiple occasions to, among other things, assist Petitioners on agreeing on a strategy for asset realization, appointing third parties to assist Petitioners in the liquidation process, and evaluating potential causes of action.

28.     One of the Liquidation Committee's functions is to review and, where appropriate, approve Petitioners' fees before the fees are submitted for approval to the Cayman Islands Grand Court.  Indeed, the Liquidation Committee has reviewed and approved all of the fees Petitioners have received for their work from 2009 through 2015 related to the Cayman Islands Proceeding.

29.     Petitioners are in frequent communication with the Liquidation Committee. Petitioners use the Liquidation Committee as a confidential sounding board regarding issues that may arise in the liquidation.  Petitioners also have held annual meetings in the Cayman Islands with SICL's general body of creditors.

30.     To stay in constant and consistent communication with the Liquidation Committee and the general body of creditors, Petitioners have issued the following formal reports:

- Saad Investments Company Limited (In Liquidation) (SICL or The Company) Report to Creditors: 2 November 2009;

- Saad Investments Company Limited (In Official Liquidation) (SICL or The Company) Report to Creditors: 22 March 2010;

- Saad Investments Company Limited (In Official Liquidation) (SICL or The Company) Report to Creditors: 19 November 2010;

10

- Saad Investments Company Limited (In Official Liquidation) (SICL or The Company) Supplementary Report to Creditors: 23 December 2010;

- Saad Investments Company Limited (In Official Liquidation) Report to Creditors: 16 March 2011;

- Saad Investments Company Limited (In Official Liquidation) Report to Creditors: 10 October 2011;

- Saad Investments Company Limited (In Official Liquidation) Report to Creditors: 10 May 2012;

- Saad Investments Company Limited (In Official Liquidation) Report to Creditors: 5 October 2012;

- Saad Investments Company Limited (In Official Liquidation) Supplementary Report to Creditors: 8 November 2012;

- Saad Investments Company Limited (In Official Liquidation) Report to Creditors: 3 May 2013;

- Saad Investments Company Limited (In Official Liquidation) Report to Creditors: 7 October 2013;

- Saad Investments Company Limited (In Official Liquidation) Supplemental Report to Creditors: 6 November 2013;

- Saad Investments Company Limited (In Official Liquidation) Security for Costs Update to Creditors: 12 March 2014; and

- Saad Investments Company Limited (In Official Liquidation) Report to Creditors: 23 October 2014.

31.    SICL's creditors expect and believe that the Cayman Islands Proceeding is the main insolvency proceeding for SICL that will resolve the vast majority of claims against SICL. Throughout the course of the liquidation, creditors have submitted approximately US$12.5 billion in proofs of debt.  Petitioners are in the process of evaluating these proofs of debt.

**B.    Books and Records**

32.    Since their appointment, Petitioners have taken numerous steps on an international scale to collect SICL's books and records.  Petitioners' efforts have been diligent

11

and expedient given the multi-jurisdictional scope.  Below are but a few examples of Petitioners'
efforts to recover SICL's books and records:

33.    First, Petitioners requested a Statement of Affairs and other information for SICL
from the company's directors, including Al-Sanea.  But no information was ever provided.  As a
result, Petitioners sought and received orders from the Cayman Islands Grand Court compelling
the Statement of Affairs and Al-Sanea's attendance at oral examination.  Al-Sanea has thus far
refused to comply with these orders.

34.    Second, upon appointment, Petitioners wrote to all of the financial institutions
with which SICL was known to have had relationships seeking information.  Most of the
institutions fully complied with Petitioners' requests; some, however, did not.  Consequently,
Petitioners sought to compel various institutions to comply with Petitioners' requests.  For
example, Petitioners sought (and obtained in some circumstances) orders from English Courts
for the delivery of information pertaining to the relationship and dealings between SICL and
institutions regulated in the United Kingdom by the Financial Services Authority.

35.    Third, Petitioners have been trying to recover SICL's books and records held by
Saad Financial Services S.A. ("**Saad Services**"), a Swiss registered company based in Geneva.
Saad Services historically provided back office support for SICL and other entities in the Saad
Group.  Al-Sanea and his wife were both directors of Saad Services.  At the outset of SICL's
liquidation, the JOLs maintained a working relationship with Saad Services and it provided
information regarding SICL's activities and operations.  But Saad Services' cooperation with
Petitioners was crippled from the beginning.  In July 2009, representatives of Al-Sanea removed
a significant portion of records pertaining to SICL from Saad Services, and transferred those
records to Saudi Arabia.  Although Petitioners and Saad Services made repeated demands for the

records, they were never returned.  Consequently, in 2010, Petitioners filed a complaint with the

Shari'a Court in Saudi Arabia asking that Al-Sanea be ordered to return to SICL the books and

records removed from Saad Services.  These proceedings are still ongoing despite Petitioners'

diligent efforts.

36.     <u>Fourth</u>, Petitioners are trying to recover certain books and records of SICL held

by Saad Specialist Hospital Company ("**Saad Hospital**"), a Saudi Arabian entity.  Saad Hospital

is understood to be owned by Al-Sanea.  Despite its name, it appears that Saad Hospital acted as

a "bank" for SICL under a services agreement.  Under that agreement, Saad Hospital is required

to deliver certain records and documentation.  Consequently, Petitioners filed a complaint for the

delivery of those records with the Shari'a Court in Saudi Arabia.  These proceedings are still

ongoing despite Petitioners' diligent efforts.

37.     As a result of their significant efforts, Petitioners have received and are reviewing

and categorizing hundreds of thousands of pages of documents and financial information.  As

indicated above, Petitioners are still attempting to recover a satisfactory production from various

parties.

### C.     Asset Realization

38.     Given (i) Petitioners' statutory duties; (ii) the Saad Group's international

structure, which primarily benefits Al-Sanea, and (iii) his refusal to cooperate with Petitioners,

they have paid considerable attention to how SICL's affairs were conducted and how the rights

of creditors were affected.  Petitioners have uncovered (and acted upon in several instances)

substantial inter-company transfers, asset transfers, and cross lending.  Petitioners—with the

general oversight of the Liquidation Committee—have been evaluating and acting upon

information regarding recoverable assets on behalf of SICL since the commencement of the

proceeding. In total, Petitioners have recovered US$454,912,038 and £6,902,377. As part of their recovery efforts, Petitioners have sought and received recognition of the Cayman Islands Proceeding as a foreign main proceeding in several countries and initiated litigation against Al-Sanea and other parties.

1.     **Several Jurisdictions have Already Recognized the Cayman Islands Proceeding as a Foreign Main Proceeding**

a.     **England**

39.     Shortly after being recognized as Joint Provisional Liquidators, Petitioners applied to the High Court of Justice, Chancery Division, Companies Court (the "**English Court**") for recognition of the Cayman Islands Proceeding as a foreign main proceeding. On August 20, 2009, the English Court entered an order finding that the "provisional liquidation of Saad Investments Company Limited be recognised as a foreign main proceeding in accordance with the UNCITRAL Model Law on cross-border insolvency as set out in Schedule 1 to the Cross-Border Insolvency Regulations."

40.     Once SICL entered into Official Liquidation, the English Court issued another order explaining that:

> The order of the Companies Court of 20 August 2009 recognising the provisional liquidation of the Company as a foreign main proceeding pursuant to Cross-Border Insolvency Regulations 2006 be extended and varied so as to continue to apply to the liquidation of the Company, as ordered by the Grand Court of the Cayman Islands of 18 September 2009.

The English Court orders recognizing the Cayman Islands Proceeding as a foreign main proceeding are collectively annexed to the Dickson Declaration as Exhibit D.

14

### b.   Australia

41.   On October 22, 2010, the Federal Court of Australia, New South Wales District Registry, General Division entered an order recognizing the Cayman Islands Proceeding. Specifically, the Australian Court ordered that:

> 2.   Pursuant to clause 1 of article 17 of the Model Law on Cross Border Insolvency in Schedule 1 to the Cross-Border Insolvency Act 2008(Cth) (Model Law), the proceeding of the Grand Court of the Cayman Islands Cause No 361 of 2009 relating to the defendant (Cayman Islands Proceeding) in which the plaintiffs were appointed joint official liquidators of the defendant be and is hereby recognised as a foreign proceeding.
>
> 3.   Pursuant to clause 2 of article 17 of the Model Law, the Cayman Islands Proceeding be and is hereby recognised as a foreign main proceeding.
>
> 4.   Pursuant to clause (d) of Article 2 of the Model Law, the plaintiffs be and are hereby recognised as foreign representatives.

The Australian Court's order recognizing the Cayman Islands Proceeding as a foreign main proceeding is annexed to the Dickson declaration as Exhibit E.

### c.   Bermuda

42.   In 2012, Petitioners petitioned the Supreme Court of Bermuda (the "**Bermuda Court**") to wind up SICL in Bermuda to collect SICL's assets there and for the specific purpose of seeking documents and information from SICL's pre-liquidation Bermuda-based auditor, PwC Dubai.   The Bermuda Court appointed Petitioners and John McKenna of Finance & Risk Services Ltd. in Bermuda as Joint Provisional Liquidators and later as Joint Official Liquidators. Although Bermuda has not adopted the UNCITRAL Model Law on Cross-Border Insolvency (the "**Model Law**"), the Bermuda Court ordered that the proceedings in Bermuda were "ancillary to the main insolvency proceeding in the Grand Court of the Cayman Islands."   The Bermuda Court's orders are annexed to the Dickson Declaration as Exhibit F.   Nonetheless, on November 10, 2014, the Bermuda proceeding was stayed due to jurisdictional issues.

15-11440-jlg    Doc 4    Filed 05/29/15    Entered 05/29/15 17:38:49    Main Document
Pg 16 of 25

### d.    Bahamas

43.    In 2010, Petitioners opened an ancillary proceeding in the Bahamas.  Pursuant to Bahamian law, since Petitioners were appointed as Joint Official Liquidators in the country where SICL was incorporated, the Bahamian court automatically recognized Petitioners' authority and that the Bahamian proceeding would be ancillary to the Cayman Islands Proceeding.

### e.    Switzerland

44.    Petitioners also filed an application in Switzerland for recognition of the Cayman Islands Proceeding in an attempt to facilitate the receipt of information.  Switzerland has not adopted the Model Law.  Nonetheless, the Swiss courts recognized that SICL's Cayman Islands Proceeding was SICL's main proceeding and initiated a "mini-bankruptcy" in which a trustee, Christopher Guenther (the "**Swiss Trustee**"), was appointed to realize SICL's Swiss assets (while a standard bankruptcy in Switzerland applies to all assets of the bankrupt wherever situated) and distribute those assets to secured creditors and "privileged" creditors that are domiciled in Switzerland (of which Petitioners believe there are none).  Once those distributions are made by the Swiss Trustee, the remaining assets will—subject to the approval of the Swiss Court—be returned to Petitioners for distribution in the Cayman Islands Proceeding.

### 2.    Other Legal Proceedings

45.    As a result of Petitioners' investigations, Petitioners have initiated legal proceedings in several jurisdictions across the globe to recover SICL's assets.  Below are some examples of the legal proceedings initiated by Petitioners:

- On July 30, 2012, SICL issued a claim against Al-Sanea in the Cayman Islands Grand Court seeking to recover about US$2.2 billion for damages for breaches of fiduciary duties.  On January 15, 2015, the Cayman Islands Grand Court issued a final award of damages for about US$2,232,861,373.

16

- On July 31, 2012, SICL commenced legal proceedings in Saudi Arabia against:

  - Al-Sanea for a refund of a value given to him by SICL regarding certain Saudi Arabian land held by Al-Sanea for the benefit of SICL. The claim is valued at about US$108 million. Petitioners received a judgment of US$108 million on March 26, 2014. This judgment has been appealed by Al-Sanea.

  - Saad Hospital, a Saudi entity affiliated with Al-Sanea, regarding payments from SICL to or for the benefit of Saad Hospital of US$15 million and US$60 million. In early December 2014, the court entered judgment for SICL for US$75 million. Saad Hospital has appealed the judgment.

  - Saad Trading Contracting & Financial Services Company ("**Saad Trading**"), a Saudi entity affiliated with Al-Sanea, regarding payments from SICL to or for the benefit of Saad Trading of over US$84 million.

- On September 1, 2011, Petitioners filed an application notice in the English Court for a freezing injunction restraining Al-Sanea from dealing with his assets up to a value of US$93 million anywhere in the world. The basis of the application was that US$93 million was due from Al-Sanea to SICL under the terms of a put option agreement entered into between SICL and Al-Sanea on April 1 2008. On September 23, 2011, the English Court granted a freezing injunction against Al-Sanea. This order was eventually overturned on appeal due to service and jurisdictional issues.

- On August 2, 2012, SICL commenced legal proceedings against Delmon Dana Company BC ("**Delmon Dana**"), a Bahraini entity affiliated with Al-Sanea and/or his family regarding a payment from SICL of US$50 million to or for the benefit of Delmon Dana.

- On August 12, 2012, SICL commenced proceedings in Switzerland against Saad Services and some of its employees regarding payments from SICL to Saad Services of about CHF28 million.

- SICL issued a claim against the English branch of HSH Nordbank AG ("**HSH**"), a German institution regarding payments of US$2.9 million from SICL to or for the benefit of HSH.

- On April 6, 2015, SICL filed a lawsuit in New York State Court to recover $800,000 that was transferred from SICL to or for the benefit of Sarah Quinlan, an employee of Saad Services.

- On May 29, 2012, SICL filed a lawsuit in New York State Court against several JP Morgan entities regarding their holding SICL assets valued at about US$185 million.

- Petitioners initiated a proceeding against SaadGroup Bank Europe Limited ("**SaadGroup Bank**") in Malta to recover an outstanding payable of US$0.94 million. Petitioners obtained a default judgment and a garnishee order requiring any party holding SaadGroup Bank assets to deliver that property in satisfaction of the judgment.

- Petitioners filed a US$176 million claim in the in Bahrain Administration proceeding of The International Banking Corporation.

- On July 28, 2009, SICL caused US$60 million to be transferred from one of its bank accounts to an account with a Saudi Arabian bank in the name of another entity believed to be owned by Al-Sanea. Petitioners have been working with Saudi counsel and other third parties in an effort to recover these funds.

- SICL held a long leasehold interest in a flat in London. Petitioners sold that interest for US$2.47 million.

- Petitioners commenced a claim in England against Markant Holdings Incorporated ("**Markant**"), which is a Panamanian registered company that owes SICL around US$5 million due to failure to repay a loan. On October 2, 2012, Petitioners applied for and received a worldwide freezing order on Markant's assets. In March of 2013, this claim was settled on confidential terms.

46.    Petitioners are cognizant of the fact that the statutes of limitations on potentially valuable U.S. causes of action may have imminent expiry dates. Petitioners, therefore, seek to promptly preserve any potential causes of action.

**D.    Defending the AHAB Lawsuit**

47.    Ahmad Hamad Algosaibi and Brothers Company ("**AHAB**") is a general partnership organized under the laws of Saudi Arabia. AHAB is the Alogosaibi family's primary vehicle for pursing their international business interests.

48.    On July 27, 2009, AHAB filed a complaint in the Cayman Islands against SICL and forty-two other defendants, alleging that Al-Sanea used his alleged managerial control of the AHAB Money Exchange Commission and Investment, a division of AHAB, to defraud AHAB

18

by (i) misappropriating over US$5 billion; and (ii) funding the misappropriations by causing AHAB to be liable to third parties for over US$9.2 billion in unauthorized debt.  AHAB claims that fraudulent conduct of Al-Sanea—who married into the Algosaibi family—was perpetrated with the knowledge and assistance of several companies, including SICL, over which Al-Sanea is alleged to have had complete control.

49.    On July 24, 2009, on AHAB's ex parte application, the Cayman Islands Grand Court issued a worldwide freezing order (the "**WFO**") against several persons, including Al-Sanea and SICL for US$9.2 billion.  The Cayman Islands Grand Court also ordered the appointment of receivers over those persons, once again including SICL.  SICL's receivers were discharged once Petitioners were appointed as SICL's Joint Official Liquidators.

50.    SICL strongly disputes all of AHAB's claims and has filed several counterclaims totaling close to $3.8 billion.

51.    In 2011, several documents highly relevant to the question of whether AHAB had knowledge of and/or authorized the alleged misconduct of Al-Sanea were discovered in a cupboard belonging to Saud Algosaibi.  On August 1, 2011, Petitioners received a letter from AHAB's attorneys acknowledging that these documents should have been brought to the attention of the Cayman Islands Grand Court at the time AHAB applied for the WFO and that under the circumstances, the WFO should be discharged.  Accordingly, on September 24, 2011, the Cayman Islands Grand Court discharged the WFO.

52.    Considering the amounts involved, Petitioners have spent a considerable amount of time defending AHAB's claims.

## RELIEF REQUESTED

53.     Petitioners, as duly appointed foreign representatives of SICL, seek recognition of the Cayman Islands Proceeding as a foreign main proceeding (or alternatively as a foreign nonmain proceeding) pursuant to sections 1504, 1507, 1509, 1515, and 1517, and seek relief as of right under sections 108 and 1520 and certain additional relief available under section 1521.

54.     Specifically, Petitioners seek entry of an order substantially in the form annexed hereto as **Exhibit B** granting the following relief as necessary to best advance the winding-up of SICL in the Cayman Islands Proceeding:

- recognizing the Cayman Islands Proceeding as a foreign main proceeding as defined in section 1502(4);

- granting relief as of right upon recognition of a foreign main proceeding pursuant to sections 108 and 1520;

- granting additional relief as authorized by section 1521, including, without limitation:

  - authorizing Petitioners to issue subpoenas, examine witnesses, take 2004 examinations, seek turnover under section 542, take evidence, seek production of documents, and delivery information concerning the assets, affairs, rights, obligations or liabilities of SICL for the purposes of locating and analyzing SICL's assets and liabilities, and obtaining recovery of SICL's books and records;

  - entrusting Petitioners with the administration and realization of all of SICL's assets that are located within the territorial jurisdiction of the United States, including, without limitation, any and all claims and causes of action belonging to SICL (including avoidance actions under Cayman Islands law); and

- awarding Petitioners such other and further relief as this Court may deem just and proper.

## BASIS FOR SUCH RELIEF

**I.   Petitioners Have Satisfied the Requirements for Recognition**

55.    As set forth in the accompanying Memorandum of Law, the Cayman Islands

Proceeding is entitled to recognition under section 1517 of the Bankruptcy Code because:

- the Cayman Islands Proceeding is (i) a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code; (ii) a foreign main proceeding within the meaning of section 1502(4) of the Bankruptcy Code because the Cayman Islands Proceeding is being conducted in the location of SICL's COMI; and (iii) in the alternative, a foreign nonmain proceeding because it is pending in a location where SICL has an establishment;

- Petitioners are foreign representatives within the meaning of section 101(24) of the Bankruptcy Code; and

- SICL's Chapter 15 petition meets the requirements of section 1515 of the Bankruptcy Code.

56.    Recognizing the Cayman Islands Proceeding would not be manifestly contrary to

the public policy of the United States under section 1506 of the Bankruptcy Code.  In fact,

granting recognition would further the stated policy goals of Chapter 15 by promoting

cooperation between courts, allowing for the fair and efficient administration of cross-border

insolvencies, and facilitating the protection and maximization of SICL's assets.

57.    Indeed, Chapter 15 recognition will enhance and facilitate the ability of the JOLs

to fulfill their duties to investigate the affairs of SICL and realize and distribute SICL's assets in

accordance with Cayman Islands insolvency law.  Specifically, Chapter 15 recognition will allow

the JOLs to (i) identify, evaluate, maximize, and preserve the value of SICL's assets; and (ii)

identify, evaluate, maximize, and preserve assets of SICL that may be located in the United

States, and investigate or prosecute potential claims related to the recovery of any such assets;

and (iii) facilitate the efficient administration of SICL's assets in one proceeding so as to prevent

a piecemeal disposition or degradation of assets that would undermine the Cayman Islands Proceeding and harm SICL and its creditors.

58.    The following documents are annexed hereto in support of this Verified Petition, as required by section 1515 and Bankruptcy Rules 1007 and 1008:

- pursuant to section 1515(b), certified copies of winding-up Orders of the Cayman Islands Grand Court appointing Petitioners as Joint Provisional Liquidators and Joint Official Liquidators for SICL, collectively annexed as **Exhibit A**;

- pursuant to 11 U.S.C. § 1515(c), a statement, annexed hereto as **Exhibit C**;

    - pursuant to Bankruptcy Rule 1007(a)(4), annexed hereto as **Exhibit D** is:

    - a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1;

    - a list containing the names and addresses of all persons or bodies authorized to administer SICL's foreign proceeding; and

    - a list of all known parties to litigation and/or arbitration pending in the United States in which SICL is a party at the time of the filing of the Petition.

- pursuant to 28 U.S.C. § 1746, a verification by Petitioners regarding this Verified Petition, annexed hereto as **Exhibit E**.

59.    Because (i) the Cayman Islands Proceeding is a foreign proceeding under section 101(23), (ii) Petitioners are foreign representatives under section 101(24), (iii) SICL's COMI is in the Cayman Islands, (iv) Petitioners have complied with all requirements of 11 U.S.C. § 1515 and Bankruptcy Rule 1007(a)(4), and (v) recognition of the Cayman Islands Proceeding would not be contrary to public policy under 11 U.S.C. § 1506, Petitioners are entitled to entry of an order recognizing the Cayman Islands Proceeding as a foreign main proceeding.

60.    Alternatively, in the event the Court determines that the Cayman Islands Proceeding is not eligible to be recognized as a foreign main proceeding as Petitioners believe it should, the Cayman Islands Proceeding should be recognized as a foreign nonmain proceeding as

defined in 11 U.S.C. § 1502(5) because, as set forth in the supporting Memorandum of Law, SICL at minimum maintains an establishment in the Cayman Islands where non-transitory economic activity takes place.

## II.    Recognition of the Cayman Islands Proceeding and the Additional Relief Requested will Benefit All Creditors

61.    The Cayman Islands Proceeding provides a centralized process to assert and resolve claims against SICL, and to make distributions to SICL's creditors.    Relief and recognition are requested to protect SICL's assets and maintain, as well as maximize, value for SICL's creditors.    Central administration of these assets is critical to any meaningful realization of their value.    Petitioners also believe that SICL may need to procure information and documents located in the United States related to potential causes of action.

62.    The Cayman Islands Proceeding and the relief requested herein will protect SICL's assets, provide Petitioners with access to information necessary to assemble the assets and claims of SICL for administration, enforce and protect SICL's rights against third parties with respect to such assets, and maximize the value of SICL's assets for the benefit of creditors.

63.    Thus, Petitioners now seek recognition of the Cayman Islands Proceeding as a foreign main proceeding in order to garner and administer SICL's assets that may be located and held in the United States for the benefit of all of SICL's creditors.

64.    Petitioners also seek additional relief so that they may conduct discovery in order to ensure the identification of all of SICL's assets and efficient administration of those assets to SICL's creditors, thereby preventing piecemeal disposition or degradation of assets that would undermine the Cayman Islands Proceeding and harm SICL and its creditors.

## NO PRIOR REQUEST

65.     No prior motion or application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

66.     WHEREFORE, Petitioners respectfully request that this Court enter an order recognizing the Cayman Islands Proceeding as a foreign main proceeding, granting additional relief upon recognition substantially in the form annexed hereto as Exhibit B, and granting such other and further relief as to the Court appears just and proper.

Dated:  May 29, 2015
      New York, New York

                              REID COLLINS & TSAI LLP


                              */s/ R. Adam Swick*
                              William T. Reid, IV
                              R. Adam Swick

                              One Penn Plaza, 49th Floor
                              New York, New York 10119
                              Tel.: (212) 344-5200
                              Fax: (212) 344-5299

                              Joshua J. Bruckerhoff *(pro hac vice pending)*
                              Paul T. Harle *(pro hac vice pending)*
                              1301 S Capital of Texas Hwy
                              Building C, Suite 300
                              Austin, Texas 78746
                              Tel.: (512) 647-6100
                              Fax: (512) 647-6129

                              *Counsel to Joint Official Liquidators of*
                              *Saad Investments Company Limited*